IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

RICHARD VENTO, *et al.*,  )
)
        Plaintiffs,  )
)
vs.  )  Civil No. 2018-91
)
CERTAIN UNERWRITERS AT  )
LLOYDS, *et al.*,  )
)
        Defendants.  )
_____  )

## MEMORANDUM OPINION AND ORDER

Before the Court is "Certain Underwriters at Lloyd's, London Subscribing to Policy of Insurance No. B1230GP03499A16 and Dual Underwriting Ltd.'s Motion for Preliminary Injunction and Brief in Support" [ECF 32]. For the reasons stated below, the motion will be denied.

### I.    BACKGROUND

Richard Vento, Lana Vento, and Viffo, LLC (collectively "the Ventos") own certain real property on St. Thomas, U.S. Virgin Islands (the "Property") that they allege was damaged by Hurricane Irma in September 2017. When they were unable to reach an agreement with their insurers, defendants Certain Underwriters at Lloyds and Dual Underwriting Limited (collectively "Lloyds"), as to the amount of damages sustained, they filed this suit on August 27, 2018 in the Superior Court of the Virgin Islands. [ECF 1-1]. Lloyds removed the case to this Court [ECF 1],[1] and on December 7, 2018, filed a motion to compel an appraisal as provided in the parties'

---

[1] The Ventos filed a motion to remand, which was denied on March 14, 2019. [ECF 51].

insurance policy, and to stay the litigation. [ECF 15]. A few days later, this Court held a scheduling conference with the parties, and discussed their participation in the appraisal process. On December 17, 2018, the Ventos filed an opposition to the motion for appraisal. [ECF 21].

On February 21, 2019, the Ventos advised the Court and Lloyds that they intended to sell the Property. *See* [ECF 30]. Lloyds filed the instant motion on March 4, 2019, seeking to enjoin the proposed sale "until the Court rules on whether appraisal is required." *Id*. at 2.[2] At a status conference on March 5, 2019, the parties agreed to proceed with appraisal without prejudice to their positions on the pending motions, and with the Court's assistance, formed a plan for the appraisal process. On March 12, 2019, by consent of the parties, the District Court referred the motions to remand, to compel an appraisal, and for a preliminary injunction to the undersigned. [ECF 47].

On April 3, 2019, upon learning that the parties had each selected an appraiser but could not agree on an umpire, the Court appointed one. [ECF 58]. Shortly thereafter, on April 8, 2019, the Ventos moved for an evidentiary hearing, alleging that the court-appointed umpire should be disqualified due to conflicts of interest. [ECF 60]. The Ventos also moved to disqualify Lloyds' appraiser for undisclosed partiality and bias. *Id.*

The Court held a hearing on the pending motions on April 12, 2019. At that time, the parties agreed that the Property would not be sold before May 12, 2019. The Ventos then asked that the motion to disqualify be "held in abeyance" so that Lloyds could have an opportunity to

---

[2] The Ventos filed their opposition to the request for injunctive relief on March 11, 2019 [ECF 44], and Lloyds responded thereto on March 12, 2019 [ECF 48].

respond. The Court ordered the parties to submit additional information on the disqualification issues by April 19, 2019. [ECF 63].

At the April 12, 2019 hearing, the Court also heard testimony from David Cook on behalf of Lloyds' lead underwriter on the subject policy. He testified that when the Ventos made their claim, Lloyds retained three entities–Honeywell, UBS and York–to prepare a scope and estimate of the damages sustained, and that Lloyds sought appraisal because the parties' experts were "far apart" in their damage estimates. He further testified that appraisal was important because of the "need to fully investigate damages," and that Lloyds was "just looking for a chance to review the damage" to the Property. On April 15, 2019, the Ventos moved for discovery regarding the umpire's and appraiser's alleged potential conflicts of interest. [ECF 64].

On April 26, 2019, the Court granted the motion to compel an appraisal. [ECF 69]. Although both parties' appraisers and the umpire have now surveyed the property, no reports have yet been produced.

At a status conference on June 4, 2019, the Ventos notified the Court that the closing on the sale of the Property was scheduled to occur on June 6, 2019. When asked by the Court whether it still sought a preliminary injunction, Lloyds responded that it did. According to Lloyds, because the Ventos are challenging Lloyds' choice of appraiser and the court-appointed umpire, an injunction remains necessary to protect Lloyds' interests. Lloyds fears that, even though both parties' appraisers, along with others previously retained by the parties, have documented the damage to the Property, the Ventos may nevertheless still be able to challenge the results of the appraisal. Therefore, Lloyds now contends that the Property should not be sold until the appraisal process is "complete."

## II.  LEGAL STANDARD

Parties may seek preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.  Courts must consider the following four factors when ruling on such motions: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Shire U.S. Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 352 (3d Cir. 2003).

To demonstrate irreparable harm, the movant must make a "clear showing of immediate irreparable injury, or a presently existing actual threat." *Acierno v. New Castle Cty.*, 40 F.3d 645, 655 (3d Cir. 1994) (internal quotation marks omitted).  Further, the harm must be "imminent." *Punnett v. Carter*, 621 F.2d 578, 586 (3d Cir. 1980).  Lastly, the nature of the harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (internal quotation marks omitted).  Further, "[t]he court must 'ensure that the issuance of an injunction would not harm the [non-movant] more than a denial would harm the [movant].'" *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (quoting *Opticians Ass'n of Am.*, 920 F.2d at 197).  Finally, "[a] preliminary injunction is an extraordinary and drastic remedy" that "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations and quotation marks omitted).

## III.  DISCUSSION

A.  <u>Likelihood of Success on the Merits</u>

On April 26, 2019, the Court granted Lloyds' motion to compel an appraisal.  Thus, to the

extent that Lloyds seeks to enjoin the sale of the Property "until the Court rules on whether appraisal is required," [ECF 32] at 2, Lloyds has already succeeded on the merits of its underlying motion, and the present motion is moot. Alternatively, to the extent that Lloyds seeks an injunction until the completion of the appraisal process, *see* [ECF 48] at 2 ("an injunction is still necessary to ensure that the appraisal process can fully occur"), not only does Lloyds fail to clarify what event must occur for the process to be deemed complete, but, as discussed below, the balance of equities does not favor Lloyds' position.

B.   <u>Risk of Irreparable Harm to Lloyds</u>

Lloyds argues that it "will suffer significant and irreparable injury" if it is denied the "valuable right [to] have the appraisal process set forth in the Policy take place" before the Property is sold. [ECF 32] at 2. According to Lloyds, it will be impossible to conduct appraisal inspections of the Property once it is sold. *Id.* at 10-11. In its view, even if the buyers allow the appraisers access to the Property, the buyers intend on beginning immediate repairs and the Court would be powerless to prevent any such alterations. *Id.* at 11. Lastly, Lloyds suggests that an injunction is warranted because of the likelihood that the Ventos will continue to try to delay the appraisal process.[3] *Id.*

The Ventos counter that Lloyds cannot demonstrate that it would suffer any irreparable harm in the absence of a preliminary injunction, and that Lloyds' fear of harm is "remote and speculative." [ECF 44] at 11.

---

[3] Lloyds also argues that its injury cannot be remedied by a monetary award: "[A] monetary award cannot make [Lloyds] whole if [it loses its] right to have the damage to the Property determined by appraisal, because it will be impossible to determine in hindsight what the award would have been." [ECF 48] at 9.

Here, in addition to the inspections that were conducted by both sides following the hurricane, both parties' appraisers and the umpire have already completed their inspections of the Property. In other words, the parties have had ample opportunity to document, in the manner of their choosing, the Property's condition at the time of each inspection. As a result, Lloyds cannot argue that it will continue to suffer significant and irreparable injury absent an injunction because it has already successfully exercised its right, under the policy, to conduct an appraisal.[4]

The Court also notes that a second Category 5 hurricane, Hurricane Maria, hit St. Thomas just weeks after the one which was the basis for the insurance claim. As a result, the condition of the Property inevitably changed since Hurricane Irma. Further, the Ventos have never been prohibited from acting to preserve, fix up or change the Property after either hurricane, nor has an injunction precluding such work ever been sought. As a practical matter, therefore, the parties have already exercised their best opportunity to inspect the Property for Hurricane Irma-related

---

[4] The policy's appraisal provision provides:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
> 1. Pay its own appraiser; and
> 2. Bear the other expenses of the appraisal and umpire equally.

[ECF 8-1] at 32.

damages. Thus, the additional harm which Lloyds fears will result from the sale is speculative at best.

Finally, even if the appraisal is completed and submitted to the parties, the Ventos could still challenge aspects of the appraisal process, including the conduct of the appraisers and umpire, irrespective of whether the Property is sold. Thus, Lloyds cannot point to the Ventos' current or future efforts in this regard as evidence of an imminent irreparable injury. In sum, the Court finds that it would be inequitable to indefinitely suspend the sale of the property based solely on an as-of-yet unsuccessful challenge to Lloyds' appraiser, the court-appointed umpire or the appraisal process itself.

C.  Risk of Harm to the Ventos

Lloyds avers that the Ventos have failed to identify any harm that would attend their being compelled to participate in the appraisal process. [ECF 32] at 12. According to Lloyds, the Ventos should abide by the policy's appraisal provision because they chose to insure the Property with Lloyds and, as owners of an asset being sold for over $5 million, the Ventos are capable of bearing the appraisal costs. *Id.* The issue, however, is not the harm that could flow to the Ventos from the appraisal, but rather from a restriction on the sale of the Property. Although the Court cannot identify harm that would come to the Ventos based on their participation in the appraisal process, the Ventos might indeed lose an opportunity to dispose of the Property, or might be exposed to additional harm if they were to breach the sale contract.

D.  Public Interest

Lloyds argues that, having shown "a likelihood of success on the merits and irreparable injury," the public interest favors the Court's granting of a preliminary injunction. [ECF 32] at 12.

Alternatively, Lloyds contends that, in this case, ordering an appraisal serves the "recognized public interest in the efficient resolution of cases and use of judicial time and resources." *Id.* An appraisal does so, Lloyds suggests, by fixing the amount of the Ventos' claim. *Id.*

The Ventos counter that if the Court were to grant a preliminary injunction, the rights of the "innocent non-party purchaser" would be affected. [ECF 44] at 12.

In this case, "the public's interest is simply to have a properly functioning insurance market." *McBean v. Guardian Ins. Agency*, 52 F. Supp. 2d 518, 521 (D.V.I. 1999). Given the fact that both parties' appraisers have conducted their inspections of the Property as dictated by the policy, the Court finds that the imposition of a preliminary injunction enjoining its sale would needlessly impinge on the Ventos' right to sell the Property and the purchasers' right to buy it. This factor thus does not favor injunctive relief.

### IV. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) To the extent Lloyds seeks to enjoin the sale of the Property pending resolution of the motion to compel an appraisal, the motion for injunctive relief is MOOT.

(2) To the extent that Lloyds seeks to enjoin the sale of the Property until the appraisal process is complete, the motion for injunctive relief is DENIED for the reasons stated above and because Lloyds has failed to articulate with any specificity when that will occur.

**Dated:** June 6, 2019　　　　　　　　　　　　　　S\_____
　　　　　　　　　　　　　　　　　　　　　　　　　　**RUTH MILLER**
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge